# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

RIVERCARD, LLC,

    Plaintiff,

v.

SCOT PATRIQUIN, *et al.*,

    Defendants.

Case No. 2:13-cv-02123-LDG-NJK

**ORDER**

The plaintiff, Rivercard, LLC, filed the instant complaint against the defendant, Scot Patriquin, alleging various contractual claims, fraud-based claims, or, alternatively, unjust enrichment. In April 2010, Rivercard entered into an escrow agreement with Patriquin, in order to purchase shares of a Canadian company, Post Oak Productions, Inc. Rivercard alleges that Patriquin, through "multiple telephonic and electronic communications," misrepresented the status of certain conditions contained in the agreement. Believing the conditions had been met, Rivercard authorized Patriquin to release $800,000 from the account. Patriquin moves to dismiss[1] (#6). Rivercard opposes the motion (#9). The Court will grant the motion in part and deny it in part.

---

[1] Alternatively, Patriquin moves for summary judgment. The Court here considers only the pleadings, and therefore addresses only the motion to dismiss.

Motion to Dismiss

The defendant's motion to dismiss, brought pursuant to Fed. R. Civ. P. 12(b)(6), challenges whether the plaintiff's complaint states "a claim upon which relief can be granted." In ruling upon this motion, the court is governed by the relaxed requirement of Rule 8(a)(2) that the complaint need contain only "a short and plain statement of the claim showing that the pleader is entitled to relief." As summarized by the Supreme Court, a plaintiff must allege sufficient factual matter, accepted as true, "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Nevertheless, while a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.*, at 555 (citations omitted). In deciding whether the factual allegations state a claim, the court accepts those allegations as true, as "Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations." *Neitzke v. Williams*, 490 U.S. 319, 327 (1989). Further, the court "construe[s] the pleadings in the light most favorable to the nonmoving party." *Outdoor Media Group, Inc. v. City of Beaumont*, 506 F3.d 895, 900 (9th Cir. 2007).

However, bare, conclusory allegations, including legal allegations couched as factual, are not entitled to be assumed to be true. *Twombly*, 550 U.S. at 555. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal* 556 U.S. 662, 678 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.*, at 679. Thus, this court considers the conclusory statements in a complaint pursuant to their factual context.

To be plausible on its face, a claim must be more than merely possible or conceivable. "[W]here the well-pleaded facts do not permit the court to infer more than the

2

mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief." *Id.*, (citing Fed. R. Civ. Proc. 8(a)(2)). Rather, the factual allegations must push the claim "across the line from conceivable to plausible." *Twombly.* 550 U.S. at 570. Thus, allegations that are consistent with a claim, but that are more likely explained by lawful behavior, do not plausibly establish a claim. *Id.,* at 567.

Factual Background

In the spring of 2010, the plaintiff, Rivercard, LLC, sought to invest in Post Oak Productions, Inc., a Canadian company. The defendant, Scot Patriquin, was the attorney for Post Oak, and "not only actively assisted with negotiations but also drafted and/or provided all documents relevant" to the transaction (#1, ¶ 14).

Rivercard deposited $800,000 into an escrow account managed by Patriquin, in order to purchase a 25% interest in Post Oak (#1, ¶ 13). The money was to be released from the escrow account following the completion of certain conditions (#1, ¶ 50). First, Post Oak was to complete a licensing agreement with Harrah's Interactive Entertainment ("Harrah's Agreement") to gain exclusive rights to operate and market the World Series of Poker Academy website (#1, ¶ 18). As a part of this agreement, Post Oak was to execute contracts with celebrity poker players to "provide video-based and/or live stream instruction and analysis" for the website (#1, ¶ 20).

Additionally, Patriquin was to ensure the completion of a Unanimous Shareholders Agreement, a Subscription Agreement for the $800,000 transaction, and a Loan Agreement for an additional $200,000 prior to the release of the escrow funds. Finally, Rivercard was to receive a "duly executed original share certificate" for 346,668 shares in Post Oak (#1, ¶ 28).

Prior to the closing of the deal, Rivercard alleges that "by and through multiple telephonic and email communications, Patriquin made numerous material representations" that the above conditions had been met (#1, ¶ 21). As an example of such

communications, Rivercard cites an email from Patriquin at the close of the deal from April 7, 2010, the subject of which stated "Executed Closing Documents" (#1, ¶ 22). Rivercard alleges that Patriquin led them "to believe that the Harrah's agreement was in fact complete and that all preconditions and requirements of the Harrah's agreement had been satisfied" and that the "players' agreements had been signed by the players" (#1, ¶¶ 19 & 20). Shortly thereafter, on April 15, 2010, believing that all conditions had been met, Rivercard sent an email approving the release of the funds held in escrow (#6, 4:4-5).

Rivercard subsequently discovered that the shares it was issued were in an empty shell corporation (2084701 Ontario, Inc.) that was also known as Post Oak Productions (#1, ¶ 29). It also discovered that the Unanimous Shareholders Agreement had not been fully executed, that conditions of the Subscription Agreement were incomplete, that the Harrah's Agreement was incomplete, that conditions within that agreement were unfulfilled, and that players' contracts were incomplete[2] (#1, ¶¶ 19, 20, 30). "In or around October or November 2010" Rivercard discovered that Post Oak was "technically insolvent and lacked funds to continue operations," and that "substantial portions of their investment funds" had unknowingly been used to pay Post Oak's prior debts (#1, ¶¶ 41-42). These payments included debts collected by Patriquin (#1, ¶ 44).

Analysis

Rivercard's complaint raises seven distinct claims: breach of contract, breach of the covenant of good faith and fair dealing, tortious breach of the covenant of good faith and fair dealing, breach of fiduciary duty, negligent/false representation, violation of U.S. securities laws, and, in the alternative, unjust enrichment. Patriquin argues that Rivercard is statutorily barred and equitably estopped from raising the first three claims (the "contractual claims"); that unjust enrichment cannot be concurrently brought with the

---

[2]Rivercard's complaint does not expressly present a timeline for these discoveries.

4

contractual claims; and that the Nevada statute of limitations bars the other three claims (the "fraud-based claims").

Contractual Claims

Rivercard alleges that Patriquin breached the parties' escrow agreement by misrepresenting the completion of multiple conditions in a variety of communications. Without addressing these alleged misrepresentations, Patriquin argues that because Rivercard gave written permission to release the funds, Rivercard's contractual claims are barred by statute, or alternatively, that Rivercard should be equitably estopped from raising these claims.

Patriquin argues Rivercard's contractual claims are barred by Nevada Revised Statute 47.240(3), which states, "whenever a party has, by his or her own declaration, act, or omission, intentionally and deliberately led another to believe a particular thing true and to act upon such belief, the party cannot, in any litigation arising out of such declaration, act or omission, be permitted to falsify it."  However, NRS 47.240(3) is inapplicable to Rivercard's claims.  Rivercard is not claiming that Patriquin breached their contract by releasing the escrow funds; rather, Rivercard claims that Patriquin breached their contract by misrepresenting the completion of conditions necessary for the release of the funds (#1, ¶¶ 51-56; 62; 69-74).  That Rivercard gave Patriquin written authority to release the funds is undisputed.  Rivercard is not trying to "falsify" that writing.  Rivercard's claim relates to events prior to the authorization, and therefore, the statute cited does not apply.

Patriquin additionally argues that Rivercard should be equitably estopped from raising these claims.  Patriquin cites *United Brotherhood v. Dahnke* to define equitable estoppel (#6, 7:15-18).  Yet Patriquin never applies this definition to the allegations of the complaint.  Patriquin argues that he "relied on [Rivercard's] assertion he could release the funds and should not now be held liable for such reliance" (*#6, 7:23-24*).  But again, Rivercard alleges breaches of contractual duty due to misconduct prior to releasing the

5

funds, not due to the actual release of the funds. Because Patriquin has not demonstrated that equitable estoppel applies to this misconduct, and because Patriquin's statutory defense does not apply to this situation, the Court denies his motion to dismiss as to these claims.

Unjust Enrichment

Patriquin argues that Rivercard's unjust enrichment claim cannot be made concurrently with Rivercard's contractual claims, because the Nevada Supreme Court has held that unjust enrichment is "not available when there is an express, written contract because no agreement can be implied when there is an express agreement." *Leasepartners Corp. V. Robert L. Brooks Trust Dated Nov. 12, 1975,* 942 P.2d 182 (1997). Patriquin alleges it is "indisputable" that there was an express contract (#6, 13:4). However, Rivercard's claim was made in the alternative. Rivercard is therefore free to argue, concurrently with its contractual claims, that no contract existed, and that "Patriquin improperly benefitted, to [Rivercard's] detriment" from their quasi-contractual relationship (#1, ¶ 44). The Court therefore denies Patriquin's motion to dismiss as to this claim.

Fraud-based Claims

Patriquin argues that Nevada's statute of limitations prevents Rivercard from raising its fraud-based claims. Nevada Revised Statute 11.190(3)(d) creates a three-year statute of limitation for fraud claims. Patriquin argues that the alleged misconduct occurred on or before April 7, 2010, when the deal closed. Patriquin therefore claims that Rivercard's complaint, filed November 15, 2013, falls beyond the three-year statute of limitations and should be dismissed.

NRS 11.190(3)(d) states that "the cause of action in such a case shall be deemed to accrue upon the discovery by the aggrieved party of the facts constituting the fraud or mistake." Rivercard's complaint does not address when they discovered the facts constituting the alleged fraud, and therefore does not address when the statute of

6

limitations began to run.  Critically, however, Rivercard's response to the motion to dismiss (#9) does not dispute that the statute of limitations began to run in April 2010.

Rivercard instead argues that the statute of limitations has been tolled due to Patriquin's physical absence from Nevada, citing *Sutro Tunnel Co. v. Segregated Belcher Mining Co.* for an 1885 interpretation of Nevada's statute of limitations (#9, 16:2-10).  *Sutro Tunnel Co. v. Segregated Belcher Mining Co.*, 19 Nev. 121 (1885).  However, as Patriquin's reply noted, under modern law, the statute of limitations does not toll when service of process against the defendant remains available, despite their location outside Nevada (#18, 9:17-26).  *See Bank of Nevada v. Friedman*, 82 Nev. 417 (1966) (noting, in overturning previous interpretations, "Were we to rule differently, a defendant could be 'present' for the purposes of being sued but not present for the purposes of the statute of limitations–an anomaly which we reject").  *See also* Nev. R. Civ. P. 4(d)(1)-(2).  Since Patriquin was amenable to service of process, the statute of limitations has not been tolled.  Rivercard's fraud-based claims must therefore be dismissed.  However, the Court will do so without prejudice.

Accordingly,

THE COURT **ORDERS** that Defendant's Motion to Dismiss (#6) is GRANTED, without prejudice, as to Plaintiff's negligent/false representation, breach of fiduciary duty, and violation of U.S. securities law claims, and is DENIED as to Plaintiff's breach of contract, breach of the covenant of good faith and fair dealing, tortious breach of the covenant of good faith and fair dealing, and unjust enrichment claims.

DATED this ___19___ day of June, 2014.

Lloyd D. George
United States District Judge